■ SOUTH MALL CONSTRUCTORS, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 62250.) — Appeal from an order of the Court of Claims (Murray, J.), entered August 6, 1982, which denied the State's motion for summary judgment on the twentieth cause of action of the claim. In August, 1969, claimant South Mall Constructors, a joint venture composed of four construction companies, entered into an agreement with the State of New York to construct the superstructure of the library and museum building in the Albany South Mall Project, now the Empire State Plaza. The contract provided for construction to begin not later than July 1, 1970 and to be completed by April 1, 1973. Claimant was to be compensated for its performance on a cost-plus-fixed-fee basis with a ceiling of $64 million. There were substantial delays both in beginning and during construction, and the parties amended the prime contract in 1974 and 1975 to extend the completion date and to increase the over-all ceiling of claimant's compensation. In December, 1976, claimant and the State executed an agreement terminating claimant's performance, under which the State assumed liability on claimant's obligations incurred in connection with the project, the costs of which were reimbursable under the prime contract. In May, 1970, after the prime contract was executed but before performance was commenced, claimant entered into a supply contract with Bethlehem Steel Corporation (hereinafter Bethlehem) for the furnishing of the reinforcing steel necessary for claimant's performance. The supply contract was in the form of a purchase order agreement which set

forth a unit price of $8.56 per 100 pounds and adopted an earlier-Bethlehem price quotation for the job containing a provision that the foregoing unit price was "firm" through December 31, 1973 but was thereafter "subject to escalation not to exceed a maximum of $5 per ton per year" from January 1, 1974. The purchase order agreement also recited that delivery dates were "to be negotiated". When the prime contract between the State and claimant was terminated, claimant and Bethlehem entered into a liquidating agreement under which claimant agreed to prosecute a claim against the State for Bethlehem's alleged losses from delays caused by the State and in turn Bethlehem agreed to limit claimant's liability to whatever claimant actually recovered from the State. In July, 1978, the claim in issue was filed, alleging losses not contemplated under the prime contract. The gravamen of the claim was that the State made numerous far-reaching changes in the project and the State's agents failed to act in an efficient and expeditious manner in coordinating the work of the principal contractors involved, all of which extended the time for claimant's performance and increased the cost and scope thereof, by reason of which claimant suffered direct and consequential damages. Among the 37 causes of action pleaded, numerous claims were asserted on behalf of subcontractors whose performances allegedly were similarly delayed and made more costly because of the State's acts and omissions. The claim of Bethlehem was contained in the twentieth cause of action. The State's motion for summary judgment on Bethlehem's claim is based on the previously described escalation clause of the latter's subcontract with claimant. Essentially, the State's argument is that all of the causes of action set forth in the claim, Bethlehem's included, are entirely grounded upon delay in performance caused by the State. However, Bethlehem had agreed under the price escalation clause to limit claimant's additional cost occasioned by delay to a maximum of $5 per ton per year after January 1, 1974. Therefore, the State argues, since it has already reimbursed claimant, in conformity with the cost-plus provisions of the prime contract, for its additional cost as determined by the price escalation clause, the State is under no legal obligation to pay for any additional losses of Bethlehem caused by delay. The Court of Claims rejected the foregoing position of the State and denied its motion. The court held that under *Bohl Constr. Co. v Depot Constr. Corp.* (42 AD2d 812), clauses in subcontracts for the South Mall project allocating the risk of delay between prime and subcontractors were entirely superseded as to State-caused delays by the Equitable Adjustment Act of 1969 (L 1969, ch 328; hereinafter the Act). While there is language in the *Bohl* case which lends itself to the Court of Claims interpretation (see *Bohl Constr. Co. v Depot Constr. Corp., supra,* p 813), we think that *Bohl* cannot be read so expansively as to hold that the Act created substantive rights in behalf of subcontractors, independent of contract, to be enforced generally by the courts even when the procedures and remedies under the Act were never invoked. As we held in *Matter of Vermont Marble Co. v Office of Gen. Servs.* (42 AD2d 468), the Act was promulgated as an alternative to and for the purposes of avoiding litigation of the myriad of delay-based claims arising out of the construction of the South Mall. Under the Act, an "aggrieved" prime contracting party with the State is permitted to apply to the Office of General Services for an equitable adjustment of its claim that its cost of performance was increased by delays attributable to "an act or omission of the State not expressly or impliedly authorized by the contract" (Public Buildings Law, § 10). In such an event, the Commissioner of General Services may enter into an agreement with the applicant to modify the prime contract accordingly, and payment by the State pursuant to such an agreement may be made upon approval thereof by various named State officials. On its face, the

Act has no application to the instant case. No claim under the Act was processed, and no award was made. Since the State has paid for claimant's increased costs in conformity with the price escalation clause, if that clause in fact limits claimant's further liability to Bethlehem with respect to any and all delays in performance, claimant obviously is not an "aggrieved" party as required under the Act. This sharply and, in our view, critically distinguishes the instant case from *Bohl Constr. Co. v Depot Constr. Corp. (supra)*. In *Bohl*, an award for increased cost to the prime contractor with respect to the plaintiff subcontractor's claimed loss was actually made as a result of an adjustment under the Act. Having thus claimed and received recovery under the Act for increased costs based upon its claimed liability to the plaintiff subcontractor for delay, the defendant contractor in *Bohl* was not permitted to obtain a windfall by invoking provisions in its subcontract with the plaintiff to insulate itself from the very same liability. To that extent, we, therefore, held that the Act superseded any inconsistent provision in the subcontract concerning delay. Since we have thus concluded that the provisions of the Act do not enlarge Bethlehem's or the claimant's contractual rights under the facts and circumstances presented here, we need not resolve the parties' further dispute over the effect of the expiration of the Act prior to the filing of the claim herein. Despite our rejection of the basis for the Court of Claims denial of the motion for summary judgment on the cause of action arising out of Bethlehem's claim, we reach the same result but on an alternative ground, namely, that issues of fact exist respecting the meaning of the subject escalation clause. When claimant and Bethlehem entered into the purchase order agreement, they were undoubtedly aware that the prime contract provided for the State's payment on a cost-plus basis. Unquestionably, the claim herein alleges acts and omissions by the State which would constitute a material breach of its implied obligation under the prime contract not to hinder or obstruct claimant's (and therefore Bethlehem's) performance (*Quaker-Empire Constr. Co. v Collins Constr. Co.*, 88 AD2d 1043, 1044). Such allegations, if established, would subject the State to liability for direct and consequential damages caused by its breach. From our reading of the escalation clause and the subcontract documents as a whole, the terms of the clause are far from clear and unambiguous in evincing the mutual intent of the parties thereby to limit Bethlehem's recovery for damages in the event of delays caused by claimant's or the State's breach of contract. Indeed, various factors tend to negate the State's interpretation that the purpose of the clause was to limit or liquidate such breach of contract damages. The word "delay" is not mentioned in the escalation clause, let alone any reference to delay occasioned by nonperformance of one of the parties.[*] The contract does not specify the date or dates for Bethlehem's performance and the parties presumably knew full well that the timing for such performance was subject to many variables unconnected to any acts or omissions by the State or claimant. Inclusion of the escalation clause can thus be explained as merely providing a means for adjusting the contract price to the anticipated uncertainties in the dates of delivery, rather than as a limitation on damages for contract breach, to a maximum of what calculates to be less than 3% of the contract unit price. As Professor Corbin has commented: "If the parties have by their agreement merely fixed in good faith a sliding price scale determining the amount to be paid for goods in accordance with the date of delivery, this should be held neither to liquidate damages nor to provide for a penalty. In such a case, delivery at one of the later dates may not be a breach at all, and no damages whatever will be collectible. And if a breach has been committed, such a provision should not prevent proof of the amount of

---

[*] This is to be contrasted with the clause in *Kalisch-Jarcho, Inc. v City of New York* (58 NY2d 377), which expressly excluded "damages" arising out of "delay".

injury done and the award of damages therefor" (5 Corbin, Contracts, § 1072, pp 410-411). Since an issue of fact is presented on the proper construction of the escalation clause, the Court of Claims correctly denied the State's motion. Order affirmed, without costs. Mahoney, P. J., Sweeney, Kane, Casey and Levine, JJ., concur.